IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff )<br>)<br>)<br>)<br>)<br>)<br>v. )<br>)<br>DAIRYLAND POWER COOPERATIVE, )<br>)<br>)<br>Defendant. )<br>)<br>) | Civil Action No.: 12-cv-462 |
| SIERRA CLUB, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>DAIRYLAND POWER COOPERATIVE, )<br>)<br>)<br>Defendant. )<br>)<br>) | Civil Action No.: 10-CV-303-bbc |

**RESPONSE TO COMMENTS**
**REGARDING PROPOSED CONSENT DECREE**

Dairyland Power Cooperative (Dairyland) offers the following response to comments filed by Haverhill Wind, LLC (Haverhill) and the joint comments filed by Wisconsin

1

DC:712364.2

Power and Light, Madison Gas and Electric and Wisconsin Public Service Corporation (Neighbor Utilities).

## Haverhill Comments

Haverhill comments that the Environmental Mitigation Projects set forth in Appendix A of the Consent Decree that has been lodged with the Court should have included wind projects like the community based wind electrical generation project of approximately 5 megawatts on property in Haverhill Township, Olmsted County, northeast of Rochester Minnesota, that Haverhill was formed to develop. The inclusion of the development of wind generation as an Environmental Mitigation Project in the lodged Consent Decree, Haverhill argues, would allow the Haverhill wind project to go forward and for a power purchase agreement to be executed with People's Electric Cooperative, a member of Dairyland.

Under the terms of the Consent Decree, Dairyland must contribute $250,000 to both the United States Forest Service and the National Park Service for the improvement, protection, or rehabilitation of forests and National Parks in the Dairyland airshed. Further, Dairyland must spend at least $2,000,000 on a Major Solar Photovoltaic Development Project. The remaining $2,500,000 shall be spent on either a Solar Photovoltaic (PV) Panels Project, a Home Weatherization Project or a Hybrid and Plug-in Fleet Replacement Program. Dairyland has five years from the date that EPA approves the plans for these projects to complete the work and spend the project dollars.

The Environmental Mitigation Projects included in the Consent Decree were subject to extensive negotiation among the United States, Sierra Club and Dairyland. Section IX of the Consent Decree requires that Dairyland to certify that projects are not otherwise required by law

and not used to satisfy any obligations that it may have under other applicable requirements of law, including but not limited to any applicable renewable or energy efficiency portfolio standards.

Dairyland responds that Haverhill's request falls outside of the intent of Item IV of Appendix A of the Consent Decree that requires Dairyland to "execute a long term power purchase agreement with one or more third-party project developers…who will then develop new major solar photovoltaic installations".  Therefore, Dairyland respectfully requests that the Court deny the request of Haverhill Wind, LLC.[1]

**Comments from Neighbor Utilities**

The Neighbor Utilities make the following comments:

- Paragraphs 5-7 of the Dairyland Consent Decree deal with calculating rolling averages.  These definitions will allow the Environmental Protection Agency to require the use of substitute data, and require a calculation methodology that is different than how these averages are typically calculated.  We believe these averages should be determined on valid hourly averages, such that the 30-day rolling day is an average of all of the valid hourly averages over the 30-day period, and a 12 month average is an average of all of the valid hourly averages for the current month and the previous 11 months.  This method is consistent with 40 C.F.R. Part 60, Subparts D and Da.

- In paragraph 49 of the Dairyland Consent Decree limitations are put on the use of natural gas when a unit is repowered using natural gas as a fuel. Specifically, this natural gas must contain "no more than 0.5 grains of sulfur per 100 standard feet of natural gas. . . . "  This requirement is more stringent than necessary.  We believe that the standard for natural gas should be as it is defined in 40 C.F.R. 72.2.

- Paragraphs 85 and 104 deal with $SO_2$ and $NO_x$ monitoring and are unnecessarily complicated.  We believe that they should merely reference 40 C.F.R. Part 75 with this qualifier:  $SO_2$ and $NO_x$ "emissions data need not be bias adjusted and the missing data substitution procedures of Part 75 shall not apply."  Unless paragraph 85 and 104 are changed in this matter, the requirements contained therein conflict with paragraphs 86 and 105.  With respect to $SO_2$ monitoring only, we believe that paragraph 104 should also contain this language:  "diluent capping (i.e., 5% $CO_2$, will be applied to the $SO_2$

---

[1] Dairyland disagrees with the description in Haverhill's comments of the negotiations concerning its project, but since the negotiations are not germane to the Consent Decree, Dairyland will not respond to those comments here.

3

emission rate for any hours where the measured CO2 concentration is less than 5% following the procedures in 40 C.F.R. Part 75, Appendix F, Section 3.3.4.1."

Each of the Neighbor Utilities state that they are in active negotiations with the United States regarding NSR claims from the United States and Sierra Club and that the Dairyland Consent Decree should have no precedential value in these negotiations. Dairyland understands the concerns raised by the Neighbor Utilities and notes again that the Consent Decree is the product of extensive negotiations and that all parties must make compromises in order for agreements like the Consent Decree to be reached. Regarding the specific comments Dairyland has the following responses:

> **Comment 1 Response:** Dairyland recognizes the expressed concern and agrees. Though Dairyland expects to comply with the requirement as written, it acknowledges that unforeseen circumstances can invalidate emissions data. Utilizing the methods of Subparts D and Da, as described in the above comment, would minimize the uncertainty of data losses that are unforeseeable but are expected to occur.

> **Comment 2 Response:** Dairyland recognizes the expressed concern and agrees. Though the requirement of paragraph 49 sets an unnecessarily lower limit than that of the federal code provision cited, Dairyland expects typical natural gas supplies that may become available to it will meet this sulfur limit, should it choose to repower with natural gas. If the language of the requirement were to be changed as suggested, Dairyland does not envision sulfur levels in available natural gas would be affected.

**Comment 3 Response:** Dairyland recognizes the expressed concerns and agrees. Although Dairyland expects to be able to comply with the requirements of paragraphs 85, 86, 104 and 105, if the suggested changes were made, the requirements would be more straight-forward. Making these changes would also retain the essential substance of the requirements and eliminate the cited conflict between paragraphs 85 and 104 and paragraphs 86 and 105.

Dairyland respectfully asks the Court to enter the Consent Decree at its earliest convenience.

Date: August 14, 2012

Respectfully Submitted,

/s/Elizabeth C. Williamson
John M. Holloway, III*
Elizabeth C. Williamson*
**WINSTON & STRAWN LLP**
1700 K Street, N.W.
Washington, D.C. 20006
Email:  jholloway@winston.com
            ewilliamson@winston.com
(202) 282-5000
(202) 282-5100 – Fax

Jeffrey L. Landsman
Vincent M. Mele
**WHEELER, VAN SICKLE & ANDERSON, S.C.**
25 West Main Street, Suite 801

5

DC:712364.2

Madison, WI 53703
Email: JLandsman@wheelerlaw.com
       VMele@wheelerlaw.com
(608) 255-7277
(608) 255-6006 - Fax

*Attorneys for Dairyland Power Cooperative*

*\*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing via ECF to all counsel of record as follows:

>Leslie K. Herje
>**U.S. ATTORNEY'S OFFICE**
>P.O. Box 1585
>Madison, WI 53701-1585
>608-264-5158
>Fax: 608-264-5724
>Email: leslie.herje@usdoj.gov
>
>David C. Bender
>Christa O. Westerberg
>Pamela R. McGillivray
>**MCGILLIVRAY WESTERBERG & BENDER, LLC**
>305 S. Paterson Street
>Madison, WI 53703
>Email: bender@mwbattorneys.com
>westerberg@mwbattorneys.com
>mcgillivray@mwbattorneys.com
>
>Elizabeth R. Lawton
>Miriam Ostrov
>**MIDWEST ENVIRONMENTAL ADVOCATES, INC.**
>551 Main Street, Suite 200
>Madison, WI 53703
>Email: blawton@midwestadvocates.com
>mostrov@midwestadvocates.org
>
>Robert Ukeiley
>**LAW OFFICE OF ROBERT UKEILEY**
>435R Chestnut Street, Ste. 1
>Berea, KY 40403
>Email: rukeiley@icg.org

This 14th day of August 2012.

>/s/*Elizabeth C. Williamson*
>Elizabeth C. Williamson

DC:712364.2